ORIGINAL

**FILED IN CHAMBERS**
U.S.D C. Atlanta

IN THE UNITED STATES DISTRICT COURT

NOV - 1 2011

FOR THE NORTHERN DISTRICT OF GEORGIA

**JAMES N/HATTEN, Clerk**
By: _____
Deputy Clerk

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | (Third Superseding) |
| | : | |
| VIKTOR PLESHCHUK, | : | |
| SERGEI TŠURIKOV, | : | NO. 1:09-CR-491-SCJ-CCH |
| HACKER 3, | : | |
| OLEG COVELIN, | : | |
| IGOR GRUDIJEV, | : | |
| RONALD TSOI, | : | |
| EVELIN TSOI, | : | |
| MIHHAIL JEVGENOV, | : | |
| VLADISLAV HOROHORIN, | : | |
| SONYA MARTIN, and | : | |
| EZENWA CHUKUKERE, | : | |
| | : | |
| Defendants. | : | |

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

1. From at least on or about November 4, 2008, through at least on or about November 25, 2008, in the Northern District of Georgia and elsewhere, the Defendants, VIKTOR PLESHCHUK, SERGEI TŠURIKOV, HACKER 3, OLEG COVELIN, VLADISLAV HOROHORIN, EZENWA CHUKUKERE, and SONYA MARTIN, together with others known and unknown to the Grand Jury, did knowingly conspire to devise a scheme and artifice to defraud, and to obtain money and property, by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, to transmit and cause to be transmitted, by

means of wire communication in interstate and foreign commerce, certain signs, signals, and sounds, that is, to knowingly cause computer commands to be transmitted from outside of the United States to the computer network of RBS WorldPay in the Northern District of Georgia, and to knowingly conduct and cause to be conducted ATM withdrawals using fraudulently obtained prepaid payroll card numbers and PIN codes from ATM terminals outside of the State of Georgia that were processed on computers within the Northern District of Georgia, in violation of 18 U.S.C. § 1349.

### BACKGROUND

2.  At all times relevant to this Indictment, unless otherwise indicated:

(a)  RBS WorldPay (RBSW) was headquartered in Atlanta, in the Northern District of Georgia. RBS WorldPay was a wholly owned subsidiary of Citizens Financial Group (CFG), a bank holding company as defined in the Federal Deposit Insurance Act.

(b)  RBS WorldPay processes credit and debit card transactions on behalf of financial institutions. The transactions occur throughout the world and are processed by electronic means. RBS WorldPay's computer servers are located in the Northern District of Georgia.

(c)  One of the services offered by RBS WorldPay is the processing of prepaid payroll card transactions. Prepaid payroll

2

cards are debit cards funded through direct deposits from card holders' employers. Prepaid payroll cards allow employers to pay their employees through direct deposits to prepaid payroll card accounts, instead of using paychecks or direct deposits into employees' bank accounts. Cash may be withdrawn by presenting the prepaid payroll card to an automated teller machine and entering the card's PIN code. Prepaid payroll cards may also be used to purchase goods and services from participating merchants. Transactions associated with these cards are processed by RBS WorldPay on behalf of its client financial institutions. Information related to these transactions is maintained by RBS WorldPay on the company's computer network.

(d) RBS WorldPay processes the transactions associated with prepaid debit cards issued by the following banks: RBS Citizens, N.A.; Palm Desert National Bank; The Bankcorp, Inc.; and First Bank of Delaware. Each of these issuing banks is federally insured. In addition to being a federally insured financial institution, RBS Citizens, N.A., is a member bank of the Federal Reserve System.

### CHARGED CONSPIRATORS

3. (a) Defendant PLESHCHUK is a computer hacker who during the relevant time period resided in or around St. Petersburg, Russia. Based on Defendant TŠURIKOV's reconnaissance, Defendant PLESHCHUK manipulated the data on the RBS WorldPay computer network, with

3

support from Defendants TŠURIKOV, HACKER 3, COVELIN, and others. Defendant PLESHCHUK with the support of Defendant TŠURIKOV developed the method by which the conspirators reverse engineered Personal Identification Numbers (PINs) from the encrypted data on the RBS WorldPay computer network. Defendant PLESHCHUK, with assistance from Defendant TŠURIKOV, Defendant HACKER 3, and others, raised the limits on certain of the prepaid payroll cards. Defendant PLESHCHUK and Defendant TŠURIKOV accessed the RBS WorldPay computer network and observed the withdrawals taking place on the cards they fraudulently obtained and distributed, tracking the proceeds of the fraud. Overall, Defendant PLESHCHUK managed the activities on the RBS WorldPay computer database, including modification of withdrawal limits, locking the cards so that there could be no further withdrawals, and tracking the amounts withdrawn. With Defendant TŠURIKOV, Defendant PLESHCHUK deleted and attempted to delete information on the RBS WorldPay computer network.

(b)   Defendant TŠURIKOV is a computer hacker who during the relevant time period resided in or around Tallinn, Estonia. TŠURIKOV was responsible for reconnaissance of the RBS WorldPay computer network and for support of other hacking activity. Defendant TŠURIKOV was contacted by Defendant COVELIN regarding vulnerabilities in the RBS WorldPay computer network. Defendant TŠURIKOV shared this information with Defendant PLESHCHUK.

4

Defendant TŠURIKOV acted as liaison, connecting the hackers who found vulnerabilities on the computer network with Defendant PLESHCHUK, who could better exploit them. With Defendant PLESHCHUK, Defendant TŠURIKOV deleted and attempted to delete information on the RBS WorldPay computer network. Defendant TŠURIKOV also managed his own cashing group and provided fraudulently obtained card numbers and PIN codes to his group within Estonia. Cashers are individuals who used the fraudulently obtained payroll cards and PIN codes to obtain cash from ATMs. Defendant TŠURIKOV helped coordinate the receipt and distribution of proceeds.

(c) Defendant HACKER 3 is a computer hacker who, in addition to his computer hacking activities in support of Defendants PLESHCHUK and TŠURIKOV, was responsible for managing the networks of cashers who used the fraudulently obtained payroll cards and PIN codes to obtain cash from ATMs on a coordinated time schedule. Defendant HACKER 3 distributed fraudulently obtained prepaid payroll cards and their respective PIN codes to casher networks around the world. Defendant HACKER 3 then managed the dividing of the proceeds and the distribution of cash from the cashers to other members of the scheme, including to Defendant PLESHCHUK, Defendant TŠURIKOV, and others.

(d) Defendant COVELIN is a computer hacker who during the relevant time period resided in or around Chişinău, Moldova.

5

Defendant COVELIN learned of the vulnerability in the RBS WorldPay computer network and provided the vulnerability (or "bug") to Defendant TŠURIKOV so that it could be exploited for financial gain. Defendants PLESHCHUK, TŠURIKOV, and HACKER 3 provided Defendant COVELIN a prepaid payroll card account number and associated PIN code, and raised the available funds on that account so COVELIN could make substantial withdrawals. COVELIN then distributed the account number and PIN code he was provided to others to fraudulently withdraw funds.

(e)  Defendant HOROHORIN was a lead casher who fraudulently withdrew RBSW funds from ATM(s) in or around Moscow, Russia. Defendant HOROHORIN currently maintains Israeli and Ukranian passports.

(f)  Defendant MARTIN was a casher who obtained fraudulently obtained RBSW card account information from Defendant CHUKUKERE. Using the fraudulently obtained card account information, MARTIN fraudulently withdrew RBSW funds from ATMs and provided cards with fraudulently obtained RBSW account numbers to others in or around Chicago, Illinois.

(g)  Defendant CHUKUKERE was a lead casher who provided a fraudulently obtained RBSW card account number and PIN code to others, including Defendant MARTIN, intending that the information be used to make fraudulent withdrawals.

6

## MEANS AND MANNERS

4. It was part of the conspiracy that:

(a) Beginning on or about November 4, 2008, Defendants PLESHCHUK, TŠURIKOV, HACKER 3, and COVELIN, aided and abetted by each other and by others, gained unauthorized access from outside of the United States into the computer network of RBS WorldPay, located in the Northern District of Georgia. To gain unauthorized access, they used a vulnerability in the RBS WorldPay computer network that was provided to Defendant TŠURIKOV by Defendant COVELIN.

(b) During the period of on or about November 4, 2008, through on or about November 8, 2008, Defendants PLESHCHUK, TŠURIKOV, and HACKER 3, obtained, without authorization, information from the RBS WorldPay computer network, including prepaid payroll card numbers and PIN codes.

(c) Defendants PLESHCHUK, TŠURIKOV, HACKER 3, and others distributed approximately 44 prepaid payroll card numbers and their respective PIN codes to networks of cashers. The lead cashers distributed the card numbers and PIN codes to individuals throughout the world, inside and outside of the United States. Of the 44 prepaid payroll card numbers distributed to the cashers, 42 of the numbers related to cards issued by Palm Desert National Bank.

(d) On or before November 8, 2008, Defendants PLESHCHUK and

7

TŠURIKOV, aided and abetted by others including Defendant HACKER 3, gained unauthorized access to the RBS WorldPay computer network and modified the data, raising the amount of funds available on the prepaid payroll card numbers they had fraudulently obtained and distributed. Also, Defendants PLESHCHUK and TŠURIKOV, aided and abetted by others including Defendant HACKER 3, raised the limits that could be withdrawn from automated teller machines on the prepaid payroll card numbers they had distributed.

(e) On or about November 7, 2008, Defendants PLESHCHUK, TŠURIKOV, and HACKER 3 provided Defendant COVELIN with a payroll debit card account number and associated PIN code, and raised the available balance on that account number.

(f) On or about November 8, 2008, Defendants PLESHCHUK and TŠURIKOV provided Defendant HOROHORIN with a payroll debit card account number xxxxxxxxxxxx9488 and associated PIN code and raised the available balance on the account number to $200,000.00. This RBSW payroll debit card account number was only assigned to HOROHORIN.

(g) On or about November 8, 2008, Defendants PLESHCHUK and TŠURIKOV provided Defendant CHUKUKERE with a payroll debit card account number xxxxxxxxxxxx7662 and associated PIN code and at least twice raised the available balance on that account number. This RBSW payroll debit card account number was only assigned to CHUKUKERE.

8

(h)   On or about November 8, 2008, Defendants PLESHCHUK, TŠURIKOV, HACKER 3, and COVELIN notified the cashers, including HOROHORIN, CHUKUKERE, and others, to whom they distributed the fraudulently obtained payroll debit card numbers and PIN codes, to begin withdrawing funds.

(i)   On or about November 8, 2008, Defendant MARTIN obtained payroll debit account number xxxxxxxxxxxx7662 and its associated PIN code from Defendant CHUKUKERE. Using this information, Defendant MARTIN distributed cards containing the fraudulently obtained account number and PIN code to others and fraudulently withdrew funds from ATM terminals in or around Chicago, Illinois.

(j)   With the limits raised, in the next approximately twelve hours at over 2,100 ATM terminals located in at least 280 cities around the world, including in the United States, Russia, Ukraine, Estonia, Italy, Hong Kong, Japan, and Canada, cashers used approximately 44 payroll debit cards to complete withdrawals worth over $9 million in United States currency.

(k)   RBSW records show that approximately $125,739.30 was withdrawn from RBSW payroll debit card account number xxxxxxxxxxxx9488, assigned to HOROHORIN.

(l)   RBSW records show that approximately $1,010,317.68 was withdrawn from RBSW payroll debit card account number xxxxxxxxxxxx7662, assigned to CHUKUKERE.

(m)   While the cashers withdrew the funds, Defendants

9

## COUNTS TWO THROUGH TEN
### (Wire Fraud)

5.    The allegations contained in paragraphs 2 through 4 are re-alleged and incorporated as if fully set forth in this paragraph.

6.    On or about the dates set forth below, in the Northern District of Georgia and elsewhere, Defendants VIKTOR PLESHCHUK and SERGEI TŠURIKOV, aided and abetted by each other, by Defendants HACKER 3 and OLEG COVELIN, and by others whose identities are currently known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the aforesaid scheme and artifice, such scheme and artifice having been devised and intended to be devised to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds, that is, the Defendant listed in the table below, aided and abetted by the other Defendants and by others, did knowingly cause the following computer commands to be transmitted from outside of the United States to the computer network of RBS WorldPay in the Northern District of Georgia:

11

| Count | Date | Defendant | Computer Command |
|-------|------|-----------|------------------|
|       |      | Sending   | (redacted)       |
|       |      | Command   |                  |
| 2     | Nov. 7, | PLESHCHUK | select top 100 * from xxxxLogs where |
|       | 2008 |           | xxxxLogID>2550000 AND xxxxPAN IN |

```
('xxxxxxxxxxxxx1627','xxxxxxxxxxxx6968','xxxxxxxxx
xxx5341','xxxxxxxxxxxxx6050','xxxxxxxxxxxxx0336','x
xxxxxxxxxxxx7540','xxxxxxxxxxxxx7662','xxxxxxxxxxxx
4809','xxxxxxxxxxxxx1905','xxxxxxxxxxxx6257','xxxx
xxxxxxxx7597','xxxxxxxxxxxxx7217','xxxxxxxxxxxx739
9','xxxxxxxxxxxxx5251','xxxxxxxxxxxxx2861','xxxxxxx
xxxxx9075','xxxxxxxxxxxxx1597','xxxxxxxxxxxxx8980',
'xxxxxxxxxxxxx3926','xxxxxxxxxxxxx3964','xxxxxxxxxx
xx5798','xxxxxxxxxxxxx5100','xxxxxxxxxxxxx1041','xx
xxxxxxxxxx1782','xxxxxxxxxxxxx3364','xxxxxxxxxxxx0
193','xxxxxxxxxxxxx5010','xxxxxxxxxxxxx2717','xxxxx
xxxxxxx8076','xxxxxxxxxxxxx1992')
```

12

| 3 | Nov. 7, 2008 | PLESHCHUK | select top 100 * from xxxxxxxxxxxTransaction where |
|---|---|---|---|

```
xxxxxxxxxxxxID>82300000 AND xxxxPAN IN
('xxxxxxxxxxxxx1627','xxxxxxxxxxxxx6968','xxxxxxxxx
xxx5341','xxxxxxxxxxxxx6050','xxxxxxxxxxxxx0336','x
xxxxxxxxxxxxx7540','xxxxxxxxxxxxx7662','xxxxxxxxxxxxx
4809','xxxxxxxxxxxxx1905','xxxxxxxxxxxxx6257','xxxx
xxxxxxxx7597','xxxxxxxxxxxxx7217','xxxxxxxxxxxxx739
9','xxxxxxxxxxxxx5251','xxxxxxxxxxxxx2861','xxxxxxx
xxxxx9075','xxxxxxxxxxxxx1597','xxxxxxxxxxxxx8980',
'xxxxxxxxxxxxx3926','xxxxxxxxxxxxx3964','xxxxxxxxxx
xx5798','xxxxxxxxxxxxx5100','xxxxxxxxxxxxx1041','xx
xxxxxxxxxxx1782','xxxxxxxxxxxxx3364','xxxxxxxxxxxxx0
193','xxxxxxxxxxxxx5010','xxxxxxxxxxxxx2717','xxxxx
xxxxxxx8076','xxxxxxxxxxxxx1992')
```

| 4 | Nov. 7, 2008 | PLESHCHUK | UPDATE Card |
|---|---|---|---|

```
SET
ATMxxxxxLimit=500000,POSxxxxxLimit=500000,ATMxxxx
xxxxx=500000,
ATMxxxxxLimit2=500000,POSxxxxxLimit2=500000,ATMxx
xxxxxx2=500000
where xxxxPAN IN ('xxxxxxxxxxxxx1627')
```

| 5 | Nov. 7, 2008 | PLESHCHUK | delete from xxxxLogs where xxxxLogID>2400000 and xxxxPAN in ('xxxxxxxxxxxx4809','xxxxxxxxxxxx3926','xxxxxxxxx xxx1041','xxxxxxxxxxxx5815','xxxxxxxxxxxx4912','x xxxxxxxxxxxx9488','xxxxxxxxxxxx2840','xxxxxxxxxxxx 3890')

delete from xxxxxxxxxxxTransaction where xxxxxxxxxxxxID>82000000 and xxxxPAN in ('xxxxxxxxxxxx4809','xxxxxxxxxxxx3926','xxxxxxxxx xxx1041','xxxxxxxxxxxx5815','xxxxxxxxxxxx4912','x xxxxxxxxxxxx9488','xxxxxxxxxxxx2840','xxxxxxxxxxxx 3890')

UPDATE Card SET ATMxxxxxLimit=505,POSxxxxxLimit=505,ATMxxxxxxxxx= 505, ATMxxxxxLimit2=5000,POSxxxxxLimit2=5000,ATMxxxxxx xxx2=5000 where xxxxPAN in ('xxxxxxxxxxxx4809','xxxxxxxxxxxx3926','xxxxxxxxx xxx1041','xxxxxxxxxxxx5815','xxxxxxxxxxxx4912','x xxxxxxxxxxxx9488','xxxxxxxxxxxx2840','xxxxxxxxxxxx 3890') |
| 6 | Nov. 7, 2008 | TŠURIKOV | select top 3 * from xxxxxxxxxxxTransaction where xxxxPAN='xxxxxxxxxxxx5024' and xxxxxxxxxxxxDateTime > '11/01/2008' |

14

```
7      Nov. 7,   TŠURIKOV    select  * from xxxxxxxxxxxTransaction where
       2008                  xxxxPAN='xxxxxxxxxxxx5024' and
                             xxxxxxxxxxxxDateTime > '11/01/2008'

8      Nov. 8,   TŠURIKOV    select
       2008                  xxxxxxxxxxxID,xxxxxxxxxxxxDateTime,xxxxxxxxxxAmount
                             ,xxxxxxxxxName,xxxxMerchxxxx,xxxxAddr,xxxxCity,xxx
                             xState,xxxxZip,xxxxCounty  from
                             xxxxxxxxxxxxTransaction where
                             xxxxPAN='xxxxxxxxxxxxx0336' and
                             xxxxxxxxxxxxID>82300000

9      Nov. 8,   TŠURIKOV    select
       2008                  xxxxxxxxxxxID,xxxxxxxxxxxxDateTime,xxxxxxxxxAmount
                             ,xxxxxxxxxName,xxxxMerchxxxx,xxxxAddr,xxxxCity,xxx
                             xState,xxxxZip,xxxxCounty  from
                             xxxxxxxxxxxxTransaction where
                             xxxxPAN='xxxxxxxxxxxxx0336' and
                             xxxxxxxxxxxxID>82300000

10     Nov. 8,   TŠURIKOV    delete from xxxxLogs where xxxxxxxID>2400000 and
       2008                  xxxxPAN in  ('xxxxxxxxxxxx0336')
```

All in violation 18 U.S.C. §§ 1343 and 2.

## COUNT ELEVEN
### (Conspiracy to Commit Computer Fraud)

7.   The allegations contained in paragraphs 2 through 4 are re-
alleged and incorporated as if fully set forth in this paragraph.

8.   From in or about November 4, 2008 through at least in or about
November 25, 2008, in the Northern District of Georgia and

elsewhere, Defendants VIKTOR PLESHCHUK, SERGEI TŠURIKOV, HACKER 3, and OLEG COVELIN, together with others known and unknown to the Grand Jury, did knowingly and wilfully conspire to: (a) knowingly cause the transmission of a program, information, code, and command, and, as a result of such conduct, intentionally cause damage and attempt to cause damage without authorization to a protected computer, causing loss aggregating at least \$5,000 in value to at least one person during a one-year period from a related course of conduct affecting a protected computer, in violation of 18 U.S.C. §§ 1030 (a)(5)(A) and 1030(b); (b) intentionally access a computer without authorization, and thereby obtain information contained in a financial record of a financial institution, and of a card issuer as defined in 15 U.S.C. § 1602(n), and from a protected computer, and the offense being committed for purposes of commercial advantage and private financial gain, and in furtherance of a criminal and tortious act in violation of the Constitution and the laws of the United States, specifically, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and wire fraud in violation of 18 U.S.C. § 1343, and the value of the information obtained exceeding \$5,000, in violation of 18 U.S.C. § 1030(a)(2); and (c) access a protected computer without authorization and by means of such conduct further the intended fraud and obtain value, specifically, prepaid payroll card numbers and PIN codes, and withdrawals from such prepaid

16

payroll card accounts exceeding US$9 million, in violation of 18 U.S.C. § 1030(a)(4), all in violation of 18 U.S.C. § 371.

## OVERT ACTS

9.    In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed the following various overt acts among others, in the Northern District of Georgia and elsewhere:

(a)  Defendants PLESHCHUK and TŠURIKOV took the actions described in Counts Two through Ten, issuing computer commands from outside of the United States to the RBS WorldPay computer network in the Northern District of Georgia.

(b)  On or about November 4, 2008, Defendant COVELIN provided Defendant TŠURIKOV with knowledge of a vulnerability on the RBS WorldPay computer network located in the Northern District of Georgia.

(c)  On or about November 4, 2008, Defendant TŠURIKOV accessed without authorization the RBS WorldPay computer network located in the Northern District of Georgia.

(d)  On or about November 5, 2008, Defendants PLESHCHUK, TŠURIKOV, and COVELIN accessed without authorization the RBS WorldPay computer network located in the Northern District of Georgia.

(e)  On or about November 5, 2008, Defendant COVELIN provided

17

Defendant PLESHCHUK login information, including a password, to obtain access to a computer server on the RBS WorldPay computer network, located in the Northern District of Georgia.

(f) On or about November 7, 2008, Defendant PLESHCHUK obtained information from the RBS WorldPay computer network located in the Northern District of Georgia.

(g) On or about November 7, 2008, Defendant PLESHCHUK modified information on the RBS WorldPay computer network located in the Northern District of Georgia.

(h) On or about November 7, 2008, Defendant HACKER 3 transferred account numbers and PIN codes obtained from the RBS WorldPay computer network to casher networks for their subsequent use at ATMs.

(i) On or about November 7, 2008 Defendant COVELIN received an account number and PIN code obtained from the RBS WorldPay computer network.

(j) On or about November 8, 2008, Defendants PLESHCHUK and TŠURIKOV accessed without authorization the RBS WorldPay computer network located in the Northern District of Georgia.

(k) On or about November 8, 2008, Defendants PLESHCHUK and TŠURIKOV deleted and attempted to delete information from the RBS WorldPay computer network located in the Northern District of Georgia.

18

## COUNT TWELVE
### (Computer Intrusion Causing Damage)

10.   On or about November 8, 2008, in the Northern District of
Georgia and elsewhere, Defendants VIKTOR PLESHCHUK and SERGEI
TŠURIKOV, aided and abetted by each other, by Defendants HACKER 3,
and OLEG COVELIN, and by others known and unknown to the Grand
Jury, knowingly caused the transmission of a program, information,
code, and command, and, as a result of such conduct, intentionally
caused damage and attempted to cause damage without authorization
to a protected computer, causing loss aggregating at least \$5,000
in value to at least one person during a one-year period from a
related course of conduct affecting a protected computer, in
violation of 18 U.S.C. §§ 1030(a)(5)(A), 1030(b), 1030(c)(4)(B),
and 2.

## COUNT THIRTEEN
### (Computer Intrusion Obtaining Information)

11.   On or about November 6, 2008, in the Northern District of
Georgia and elsewhere, Defendants VIKTOR PLESHCHUK and SERGEI
TŠURIKOV, aided and abetted by Defendants HACKER 3 and OLEG
COVELIN, and by others known and unknown to the Grand Jury,
intentionally accessed a computer without authorization, and
thereby obtained information contained in a financial record of a
financial institution, and of a card issuer as defined in 15 U.S.C.
§  1602(n), and from a protected computer, and the offense being

19

committed for purposes of commercial advantage and private financial gain, and in furtherance of a criminal and tortious act in violation of the Constitution and the laws of the United States, specifically, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and wire fraud in violation of 18 U.S.C. § 1343, and the value of the information obtained exceeding $5,000, in violation of 18 U.S.C. §§ 1030(a)(2), 1030(c)(2)(B)(i), 1030(c)(2)(B)(ii), 1030(c)(2)(B)(iii), and 2.

## COUNT FOURTEEN
### (Computer Intrusion Furthering Fraud)

12. On or about November 8, 2008, in the Northern District of Georgia and elsewhere, Defendants VIKTOR PLESHCHUK, SERGEI TŠURIKOV, and HACKER 3, aided and abetted by Defendant OLEG COVELIN and by others known and unknown to the Grand Jury, knowingly and with intent to defraud accessed a protected computer without authorization and by means of such conduct furthered the intended fraud and obtained value, specifically, prepaid payroll card numbers and PIN codes, and withdrawals from such prepaid payroll card accounts exceeding $9 million, in violation of 18 U.S.C. §§ 1030(a)(4), 1030(c)(3)(A), and 2.

20

## COUNT FIFTEEN
### (Aggravated Identity Theft)

13. On or about November 7, 2008, in the Northern District of Georgia and elsewhere, Defendants VIKTOR PLESHCHUK, SERGEI TŠURIKOV, and HACKER 3, aided and abetted by each other, by Defendant OLEG COVELIN, and by others known and unknown to the Grand Jury, during and in relation to the crime of wire fraud in violation of 18 U.S.C. § 1343, did knowingly transfer, possess, and use, without lawful authority, means of identification of other persons, that is, the Defendants knowingly transferred prepaid payroll card account numbers and associated PIN codes from the RBS WorldPay computer network located in the Northern District of Georgia, possessed the card account numbers and PIN codes, and transferred card account numbers and PIN codes to others for their use at ATM terminals, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), 1028A(c)(5), and 2.

## COUNT SIXTEEN
### (Access Device Fraud)

14. The allegations contained in paragraphs 2 through 4, and paragraph 9, are re-alleged and incorporated as if fully set forth in this paragraph.

15. On or about November 8, 2008, Defendant SERGEI TŠURIKOV distributed fraudulently obtained prepaid payroll card numbers and PIN codes to Defendant IGOR GRUDIJEV, who, in turn, distributed the

21

information to Defendants RONALD TSOI, EVELIN TSOI, and MIHHAIL JEVGENOV in Estonia. Together, Defendants RONALD TSOI, EVELIN TSOI, and MIHHAIL JEVGENOV withdrew funds worth approximately US\$289,000 from ATMs in Tallinn, Estonia. These transactions were debited on prepaid payroll card accounts on the RBS WorldPay computer system located in the Northern District of Georgia.

16. On or about November 8, 2008, in the Northern District of Georgia and elsewhere, Defendants RONALD TSOI, EVELIN TSOI, and MIHHAIL JEVGENOV, aided and abetted by Defendant IGOR GRUDIJEV and by others known and unknown to the Grand Jury, knowingly and with intent to defraud effected transactions with at least one access device issued to another person, that is prepaid payroll card account numbers and PIN codes which can be used, alone and in conjunction with another access device, to obtain money, goods, services, and other things of value, and that can be used to initiate a transfer of funds not originated solely by paper instrument, in order to receive payment and other things of value within a one year period the aggregate of value of which was at least \$1,000, said offense affecting interstate and foreign commerce, in violation of 18 U.S.C. §§ 1029(a)(5), 1029(c)(1)(A)(ii), and 2.

## COUNTS SEVENTEEN THROUGH TWENTY-ONE
### (Wire Fraud)

17.   The allegations contained in paragraphs 2 through 4, and paragraph 9, are re-alleged and incorporated as if fully set forth in this paragraph.

18.   On or about November 8, 2008, in the Northern District of Georgia and elsewhere, Defendant HOROHORIN for the purpose of executing and attempting to execute the aforesaid scheme and artifice, such scheme and artifice having been devised and intended to be devised to defraud, and to obtain money and property, by means   of   materially   false   and   fraudulent   pretenses, representations,   and   promises,   did   knowingly   cause   to   be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds, that is, the Defendant knowingly caused wires signaling the following requests for the withdrawal of funds from fraudulently obtained RBSW prepaid payroll card account number xxxxxxxxxxxx9488 to be transmitted from outside of the United States to the computer network of RBSW in the Northern District of Georgia:

| Count | Time (at or about, Moscow, Russia) | Amount (U.S.D.) |
|-------|-----------------------------------|-----------------|
| 17    | 16:02:07                          | $370.04         |
| 18    | 16:02:46                          | $370.04         |
| 19    | 16:03:29                          | $370.04         |
| 20    | 16:04:08                          | $370.04         |
| 21    | 16:04:49                          | $370.04         |

All in violation 18 U.S.C. §§ 1343 and 2.

## COUNT TWENTY-TWO
### (Access Device Fraud)

19.   The allegations contained in paragraphs 2 through 4, and paragraph 9, are re-alleged and incorporated as if fully set forth in this paragraph.

20. On or about November 8, 2008, Defendant HOROHORIN fraudulently obtained a prepaid payroll card associated with RBSW account number xxxxxxxxxxxx9488 and associated PIN code from which funds worth at least $125,739.30 were withdrawn from ATMs in or around Moscow, Russia.   These transactions were debited on prepaid payroll card accounts on the RBSW computer system located in the Northern District of Georgia.

21. On or about November 8, 2008, in the Northern District of Georgia and elsewhere, Defendant HOROHORIN aided and abetted by others known and unknown to the Grand Jury, knowingly and with intent to defraud effected transactions with at least one access device issued to another person, that is prepaid payroll card account numbers and PIN codes which can be used, alone and in conjunction with another access device, to obtain money, goods, services, and other things of value, and that can be used to initiate a transfer of funds not originated solely by paper instrument, in order to receive payment and other things of value within a one year period the aggregate of value of which was at least $1,000, said offense affecting interstate and foreign

24

commerce, in violation of 18 U.S.C. §§ 1029(a)(5), 1029(c)(1)(A)(ii), and 2.

### COUNTS TWENTY-THREE THROUGH TWENTY-EIGHT
### (Wire Fraud)

17. The allegations contained in paragraphs 2 through 4, and paragraph 9, are re-alleged and incorporated as if fully set forth in this paragraph.

18. On or about November 8, 2008, in the Northern District of Georgia and elsewhere, Defendant SONYA MARTIN, aided and abetted by Defendant EZENWA CHUKUKERE and by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the aforesaid scheme and artifice, such scheme and artifice having been devised and intended to be devised to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds, that is, the Defendant knowingly caused wires signaling the following requests for the withdrawal of funds from fraudulently obtained RBSW prepaid payroll card account number xxxxxxxxxxxx7662 to be transmitted from in or around Chicago, Illinois, to the computer network of RBSW in the Northern District of Georgia:

| Count | Time (at or about, Chicago, IL) | Amount (U.S.D.) |
|-------|----------------------------------|-----------------|
| 23 | 01:34:08 | $803.00 |
| 24 | 01:35:09 | $803.00 |
| 25 | 02:00:24 | $803.00 |
| 26 | 04:33:00 | $803.00 |
| 27 | 04:34:02 | $803.00 |
| 28 | 04:35:11 | $803.00 |

All in violation 18 U.S.C. §§ 1343 and 2.

## COUNT TWENTY-NINE
### (Access Device Fraud)

22.    The allegations contained in paragraphs 2 through 4, and paragraph 9, are re-alleged and incorporated as if fully set forth in this paragraph.

23.  On or about November 8, 2008, in the Northern District of Georgia and elsewhere, Defendants EZENWA CHUKUKERE and SONYA MARTIN, aided and abetted by each other and by others known and unknown to the Grand Jury, knowingly and with intent to defraud trafficked in and used at least one unauthorized access device, that is a prepaid payroll card account number and PIN code which can be used, alone and in conjunction with another access device, to obtain money, goods, services, and other things of value, and that can be used to initiate a transfer of funds not originated solely by paper instrument, and during a one-year period by such conduct obtained anything of value aggregating at least $1,000,

26

said offense affecting interstate and foreign commerce, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(c)(1)(A)(i), and 2.

## FORFEITURE

24.  As a result of committing an offense as alleged in Counts 1-14 and 16-29 of this Indictment, the Defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2) any property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as the result of said offenses as alleged in this Indictment, including, but not limited to a sum of money representing the amount of proceeds obtained as a result of the offense, of at least $9,477,146.67 in United States currency.

In addition, as a result of an offense as alleged in Counts 16, 22, and 29 of this Indictment, the Defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 1029(c) any personal property used or intended to be used to commit the offense(s).

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

27

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forgettable property described above.

A _____ TRUE _____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

LAWRENCE R. SOMMERFELD
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar Number 666936

NICHOLAS OLDHAM
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar Number 592701

CAROL SIPPERLY
STAFF ATTORNEY
COMPUTER CRIME & INTELLECTUAL PROPERTY SECTION
U.S. DEPARTMENT OF JUSTICE
Maine Bar Number 009930

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone 404-581-6000

28